**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MISTY D. C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:21-CV-540-JFJ** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Misty D. C. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I.     General Legal Standards and Standard of Review

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 46-year-old female, protectively applied for Title II disability insurance benefits on August 21, 2019, alleging a disability onset date of June 1, 2019. R. 212-13. Plaintiff subsequently applied for Title XVI supplemental security income on August 26, 2019, also alleging a disability onset date of June 1, 2019. R. 214-17. Plaintiff claimed she was unable to work due to conditions including spinal fusion due to early degenerative disc disease, fibromyalgia, psoriatic arthritis, depression, high anxiety, migraines, and nerve damage. R. 266. Plaintiff's claims for benefits were denied initially on January 9, 2020, and on reconsideration on April 30, 2020. R. 72-129. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on February 4, 2021. R. 36-70. The ALJ issued a decision on March 30, 2021, denying benefits and finding Plaintiff not disabled because she could perform

other work existing in the national economy.  R. 13-30.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024.  R. 16.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 13, 2019.  *Id.*[1]  At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia; migraine headaches; obesity; psoriatic arthritis; spondyloarthritis; depression; anxiety; and personality disorder.  *Id.*  The ALJ found Plaintiff's alleged spinal fusion to be medically non-determinable.  *Id.*  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 16-20.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in all four areas of (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.  R. 19-20.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform sedentary work, except as follows:

> [T]he claimant is not able to climb ladders, ropes, or scaffolds; crouch or crawl. The claimant is able to occasionally interact with the general public and adapt to changes in work processes.  She should not perform work involving any exposure to extreme hot temperatures, meaning temperatures over 90 degrees; she also should not perform work involving exposure to unprotected heights or dangerous moving machinery.  The claimant can occasionally climb ramps and stairs, stoop, kneel, and balance on uneven, moving or narrow surfaces.  The claimant is able to understand, remember, and carry out simple and detailed, but not complex, tasks with an SVP of 1 to 4.  She is also able to occasionally interact with supervisors and coworkers.  She should perform no tandem or teamwork.

---

[1] Plaintiff's applications for disability both alleged an onset date of June 1, 2019.  R. 212, 214. The difference in alleged onset dates is not material to the Court's analysis of the ALJ's decision.

R. 20.  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

R. 28.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five

that Plaintiff could perform other unskilled sedentary work, such as a Clerical Sorter, Filler, and

Assembler.   R. 29-30.   The ALJ determined the VE's testimony was consistent with the

information contained in the Dictionary of Occupational Titles ("DOT").  R. 29.  Based on the

VE's testimony, the ALJ concluded these positions existed in significant numbers in the national

economy.  R. 30.  Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.**    **Issue**

Plaintiff raises one allegation of error on appeal: that the ALJ's consistency analysis was

improper.  ECF No. 17.

**IV.**    **Analysis – ALJ's Consistency Analysis Was Adequate, and Any Possible Legal Error Was Harmless**

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's

symptoms, the ALJ must determine whether the claimant's statements about the intensity,

persistence, and limiting effects of symptoms are consistent with the objective medical evidence

and other evidence of record.  Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7

(Mar. 28, 2016).   If they are consistent, then the ALJ "will determine that the individual's

symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.*

If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely

to reduce his or her capacities to perform work-related activities." *Id.*  Factors the ALJ should

consider in determining whether a claimant's pain is in fact disabling include the claimant's

attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact

with a doctor; the possibility that psychological disorders combine with physical problems; the

claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's

medication.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence."  *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). If the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence."  *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide."  *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  R. 21.  As support, the ALJ explained that, for instance, despite Plaintiff's complaint of problems with her hands, a consultative examination showed she was able to effectively oppose her thumb to her fingertips, manipulate small objects, and grasp a tool such as a hammer.  *Id.* (citing R. 353, hearing testimony).  Later in the decision, the ALJ explained that medical records failed to show Plaintiff's headaches were as frequent or severe as described in her testimony.  R. 24-25 (citing R. 348-355, 398, 402, 408, 410, 445, 484-490).

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis.  *See* SSR 16-3p (superseding SSR 96-7p).  In practice, there is little substantive difference between a "consistency" and "credibility" analysis.  *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit).  Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

The ALJ later concluded that the "pain and fatigue" associated with Plaintiff's fibromyalgia supported the less than sedentary RFC, and her migraine headaches supported the stated environmental limitations, especially as related to extreme heat.  R. 28.  The ALJ concluded that Plaintiff's diagnoses of psoriatic arthritis, spondyloarthritis, and a body-mass index consistent with obesity further supported the stated exertional limitations, but also limitations of no climbing ladders, ropes, or scaffolds, and other postural limitations were based on a combination of Plaintiff's various physical medically determinable impairments.  *Id.* (citing R. 348-355, 362-478, 484-490).  The ALJ explained that Plaintiff's physical consultative exam showed no significant deficits in her range of motion in her extremities, so, despite physical exams reflecting joint pain and weakness, the lack of findings of atrophy or positive straight leg raise tests warranted the RFC without additional limitations.  *Id.*  Regarding mental impairments, the ALJ concluded that, although Plaintiff's symptoms supported restricting her social interaction and limiting her to simple and detailed tasks, findings such as her ability to repeat five digits forward and the estimate showing her intellectual abilities were in the average range ruled out additional mental limitations.  *Id.*

Plaintiff argues the ALJ's consistency analysis was erroneous, because the ALJ failed to properly evaluate Plaintiff's testimony about (1) her "bad days"; (2) her need to nap daily; and (3) her need to elevate her legs during most of the day.  She further alleges the ALJ failed to consider the third-party statement of her sister.  ECF No. 17 at 7-13.  The Court rejects Plaintiff's arguments, finds the ALJ's consistency analysis was adequate, and any potential error was harmless.

### A.    Plaintiff's Report of "Bad Days"

Plaintiff testified she suffered "bad days" due to pain, and two to three days per week she could not get out of bed and spent most of the day lying down.  R. 62.  Plaintiff argues the ALJ

failed to consider this testimony as part of the consistency analysis, relying instead on an incomplete discussion of Plaintiff's impairments and symptoms.

Plaintiff's argument fails.  Plaintiff points to records supporting her joint pain, decreased mobility, and weakness on examinations.  *See* R. 363, 371, 375, 381, 485, 488.  Plaintiff also points to testing supporting fibromyalgia (R. 355), scaling plaques consistent with psoriasis (R. 429), a report to APRN Smallwood that there were days she sat in a chair all day (R. 484-485), a reported need for frequent breaks when doing household chores and hobbies (R. 62, 282), and a reported need to limit shopping trips due to pain (R. 61).  However, the ALJ found Plaintiff's fibromyalgia and psoriatic arthritis to be severe impairments, and she discussed the cited records supporting fibromyalgia and Plaintiff's report to APRN Smallwood.  R. 16, 24 (citing R. 355, 484).  The ALJ also noted that there were "physical examinations reflecting joint pain and weakness," but that there were no findings of atrophy or positive straight-leg raise tests to support further RFC limitations.  R. 28.

As explained above, the ALJ credited Plaintiff's pain and fatigue associated with her fibromyalgia, and she limited Plaintiff to a less than sedentary RFC as a result.  R. 28.  The ALJ also included exertional and postural limitations in the RFC due in part to Plaintiff's psoriatic arthritis and a combination of her various physical medically determinable impairments.  *Id.* (citing R. 348-355, 362-478, 484-490).  Contrary to Plaintiff's argument, the ALJ considered and evaluated Plaintiff's subjective reports of pain and the resulting limitations.  *Cf. Ryshana W. v. Kijakazi*, No. 20-CV-541-CDL, 2022 WL 850512, at *6 (N.D. Okla. Mar. 22, 2022) (finding ALJ's consistency findings regarding sitting ability unsupported by substantial evidence, where ALJ did not address fact that claimant required frequent breaks and reclining chair to perform part-time work, and objective evidence revealed significant pain and limitations with hip mobility).

### B.      Plaintiff's Reported Need to Nap During the Day

Plaintiff testified that she had trouble sleeping due to pain, and she napped every day for one to two hours.  R. 57.  Plaintiff argues the ALJ failed to properly evaluate this testimony.  Plaintiff's argument is unpersuasive.  Here, the ALJ specifically discussed Plaintiff's fatigue throughout the decision, noting at step three that Plaintiff complained of fatigue and "evidence supporting her diagnosis of fibromyalgia explains this symptom[]."  R. 17.  In discussing the RFC, the ALJ again acknowledged Plaintiff's fatigue, noting that "pain and fatigue associated with her fibromyalgia supports the less than sedentary" RFC.  R. 28.  Plaintiff points to no medical records suggesting her fatigue was more severe than the ALJ found, or that she needed to nap daily.  In addition, at medical visits in January and December of 2020, Plaintiff reported negative for fatigue.  R. 485, 488.  Accordingly, the ALJ appropriately discounted Plaintiff's subjective reports of needing to nap during the day.  *Cf. Kellams v. Berryhill*, 696 F. App'x 909, 914-915 (10th Cir. 2017) (ALJ erred in consistency analysis by, among other findings, "broadly characterizing the record as revealing 'some abnormalities of the lumbar spine'" where CT scans showed significant abnormalities, and by downplaying multilevel spinal fusion surgery as "minimally invasive spine stabilization surgery").

### C.      Plaintiff's Reported Need to Elevate Her Legs

Plaintiff testified that, to relieve her foot pain, she would sit in her recliner and elevate her feet 80 percent of the day.  R. 54.  The ALJ acknowledged this testimony.  R. 21 (noting Plaintiff testified to "needing to elevate her legs") (citing hearing testimony).  Plaintiff argues that this acknowledgment was insufficient, because the ALJ did not explain why she rejected this testimony.

Again, Plaintiff's argument is unpersuasive.  In discussing the RFC, the ALJ noted that Plaintiff's physical consultive exam revealed no significant deficits in her range of motion in her

extremities, and there was an overall lack of findings of atrophy or positive straight-leg raise tests, despite findings of joint pain and weakness.  R. 28 (citing R. 348-355, 362-478, 484-490).  As explained above, the ALJ credited Plaintiff's complaints of pain due to fibromyalgia and limited the RFC accordingly.  *Id.*  Plaintiff cites no part of the record, beyond her own testimony, supporting a need to elevate her legs throughout most of the day.  Plaintiff simply asks the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### D.    Third-Party Function Report

Plaintiff contends the ALJ committed reversible error by failing to discuss the October 2019 third-party function report completed by Plaintiff's sister.  R. 288-295.  Plaintiff points out that her sister indicated Plaintiff's arthritis and fibromyalgia cause "so much pain" that Plaintiff "can't do anything" (R. 288), and Plaintiff could occasionally do light housework with "frequent breaks" (R. 289).  Plaintiff argues the ALJ should have discussed her sister's report when evaluating Plaintiff's own subjective reports, and the failure to do so is grounds for remand.

For claims filed after March 27, 2017, such as Plaintiff's, there is no specified articulation requirement regarding evidence from nonmedical sources.  *See* 20 C.F.R. §§ 404.1520c(d), 416.920c(d) (stating that "[w]e are not required to articulate how we considered evidence from nonmedical sources using the [medical opinion] requirements in paragraphs (a)-(c) in this section").  Although there is no specified *articulation* requirement, the ALJ is clearly required to *consider* such evidence from nonmedical sources.  *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining that, in evaluating symptoms, such as pain, "[w]e will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work").

District courts in Oklahoma diverge on whether an ALJ's omission of any discussion of a nonmedical third-party report constitutes error under the current regulations. *Compare, e.g., Andrea D. W. v. Kijakazi*, No. 20-cv-523-JFH-SH, 2022 WL 1192780, at \*4-6 (N.D. Okla. Feb. 9, 2022) (hereinafter "*Andrea D. W. R&R*") (collecting cases and concluding that ALJ's failure to mention function report from claimant's mother was legal error under § 404.1520c(d)), *report and recommendation adopted*, 2022 WL 902723 (N.D. Okla. Mar. 28, 2022) (hereinafter "*Andrea D. W. O&O*"), *with Evans v. Comm'r*, No. CIV-20-80-RAW-KEW, 2021 WL 4478171, at \*6-7 (E.D. Okla. Sept. 15, 2021) (concluding failure to mention function report completed by claimant's brother was not legal error under § 404.920c(d), where ALJ indicated he considered all evidence in the record), *report and recommendation adopted sub nom Evans v. Kijakazi*, No. CIV-20-80-RAW-KEW, 2021 WL 4476629 (E.D. Okla. Sept. 29, 2021). For purposes of this case, the Court assumes without deciding that the ALJ's omission was legal error pursuant to the regulations.

The Court concludes that, even if the ALJ erred by omitting mention of the third-party report, the error was harmless. The Tenth Circuit has found, in unpublished opinions, that omission of a third-party report from the ALJ's decision amounts to harmless error in cases where the same evidence discussed by the ALJ in discounting the claimant's allegations also discredits the third-party statement. *See Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (finding claimant's husband's letter was cumulative of claimant's testimony concerning her limitations and reports of pain, which the ALJ discussed and found not credible, and concluding that error in failing to expressly address this evidence was harmless, because "the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims") (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)); *Brescia v. Astrue*, 287 F. App'x 626, 630-31 (10th Cir. 2008) (finding that, "[w]hile the ALJ did not explicitly discuss the

statements of Ms. Brescia's sister and friend, we do not believe this omission is grounds for remand given the nature of their evidence, which was largely cumulative of Ms. Brescia's testimony and written statements").

The Tenth Circuit recently reaffirmed this "harmless error" approach to an ALJ's failure to discuss third-party statements, albeit in another unpublished opinion.  *See Davis v. Comm'r*, No. 21-3148, 2022 WL 1763389, at *3-4 (10th Cir. June 1, 2022).  In *Davis*, the plaintiff appealed denial of a fee award.  The Commissioner had argued to the district court that the ALJ's failure to mention a third-party statement was harmless error because the statement was cumulative of allegations the ALJ expressly rejected, relying on *Best-Willie* and *Brescia*.  *Id.* at *1.  Although the district court did not find harmless error in that case, the district court found the Commissioner's legal position was "substantially justified" for purposes of the fee analysis.  *Id.* On appeal, the plaintiff argued the Commissioner's position was not substantially justified, in part, because the *Best-Willie* approach would require a court to conduct an improper post-hoc rationalization in conducting the harmless-error analysis.  *Id.* at *3.

The Tenth Circuit affirmed the district court's denial of the fee award and found the Commissioner's position to be legally reasonable and therefore "substantially justified."  *Id.* at *4. In reaching this decision, the panel explained that the Commissioner's argument premised on *Best-Willie* was a "well-established harmless error argument."  *Id.* at 3.  The panel also stated that a reviewing court applying the *Best-Willie* approach does not engage in post-hoc rationalization where "other reasoning in [the ALJ's] decision supplied sufficient grounds for affirmance notwithstanding the error."  *Id.*  Therefore, the Tenth Circuit's most recent statement on this issue reaffirms application of *Best-Willie*, and it indicates that a court does not engage in improper post-

hoc rationalization by evaluating whether a third-party report is cumulative of statements the ALJ rejected.[3]

As in *Best-Willie* and *Brescia*, the same evidence the ALJ relied upon in discounting Plaintiff's own statements would tend to discount her sister's statements, which are largely cumulative of Plaintiff's statements.  Plaintiff points to Ms. Watson's statements that Plaintiff's arthritis "causes so much pain and swelling, she can't do anything," and Plaintiff could occasionally do light housework "with frequent breaks."  R. 288-289.  These statements are consistent with Plaintiff's own reports that she is in "constant pain," would do "very light housekeeping" once a week, and she would take a break every ten minutes while doing housework. R. 280-282.  The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms to be inconsistent with the medical evidence, and the Court affirms this finding for the reasons explained in this opinion.  Specifically, the ALJ discussed the severity of Plaintiff's alleged pain and fatigue, limiting Plaintiff to a reduced sedentary RFC as a result.  R. 28. The ALJ also relied on the consultative exam findings of no significant deficits in Plaintiff's range of motion in her extremities, as well as the lack of findings of atrophy or positive straight-leg raise tests, despite examinations reflecting joint pain and weakness.  *Id.*   Accordingly, the Court concludes that any error in omitting discussion of Plaintiff's sister's statement was harmless.  *See*

---

[3] Because the Tenth Circuit has recently reaffirmed this approach to harmless error when evaluating an ALJ's failure to discuss a third-party statement, the Court finds unpersuasive earlier decisions that either call *Best-Willie* into question, decline in every instance to find harmless error, or prohibit an evaluation by the judicial reviewer of whether a third-party statement is cumulative. *See Andrea D. W. R&R*, 2022 WL 1192780, at *6 (finding omission of third-party function report was not harmless error, because evaluation of the report would risk violating the general rule against post-hoc justification of administrative action) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)); *Andrea D. W. O&O*, 2022 WL 902723, at *3 (finding omission of third-party function report was not harmless error, because evidence was not cumulative, and a finding of harmless error would require an impermissible post-hoc determination that the ALJ discounted the report as cumulative, rejecting *Best-Willie's* approach); *Bonnie M. v. Kijakazi*, No. 19-CV-622-CVE-JFJ, 2021 WL 4823270, at *8-9 (N.D. Okla. Oct. 15, 2021) (same).

*Best-Willie*, 514 F. App'x at 736; *Brescia*, 287 F. App'x at 630-31; *Miranda R. A. v. Kijakazi*, No. 20-cv-453-NDF-SH, 2022 WL 1005303, at (N.D. Okla. Apr. 4, 2022) (finding ALJ's failure to mention third-party function report was harmless, because "the same evidence discussed by the ALJ in discounting the claimant's allegations also discredits the lay witness statement").

 In sum, the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and SSR 16-3, and any possible error in omission of the third-party report from the ALJ's decision was harmless.

## V. Conclusion

 For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

 **SO ORDERED** this 31st day of March, 2023.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**